UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CR-35 |
| | ) | (VARLAN/SHIRLEY) |
| JEFFREY DEAN JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate C. Clifford Shirley on October 3, 2008 [Doc. 56]. Defendant filed objections to the R&R [Doc. 58], which the Court will consider *de novo*.

Defendant is charged with possession and use of explosive devices, as well as related firearms charges. [*See* Doc. 52.] The R&R addresses defendant's Motion to Suppress Defendant's Statements [Doc. 20] and defendant's Motion to Suppress Evidence Obtained from Search of Defendant's Residence [Doc. 21]. Following evidentiary hearings on the motions to suppress on June 3, 2008 and September 4, 2008, Magistrate Judge Shirley entered a R&R recommending that the motions to suppress be denied. [*See* Doc. 56.]

## I. Standard of Review

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which defendant objects. In doing so, the Court has carefully considered Magistrate Judge Shirley's R&R [Doc. 56], the underlying briefs [Docs. 20; 21; 23; 24], defendant's objections [Doc. 58], the transcript of proceedings before Magistrate Judge Shirley [Docs. 40; 55], and the exhibits admitted at the suppression hearing [*see* Docs. 36; 54]. For the reasons set forth herein, the Court will overrule defendant's objections, and the motions to suppress will be denied.

## II. Analysis

### A. Objection to the Conclusion that Defendant's Waiver of *Miranda* Rights Was Knowing, Voluntary, and Intelligent

Defendant objects to Magistrate Judge Shirley's finding that defendant's waiver of his *Miranda* rights was knowing, voluntary, and intelligent. Defendant argues that the R&R applies the incorrect legal standard and the factual determination that defendant understood his actions is in error because defendant was under the influence of drugs and suffering from a weakened mental state at the time he was interview by law enforcement officers.

Defendant suggests that Magistrate Judge Shirley relied on an incorrect statement of the law by requiring a showing of coercive police activity for a finding that a waiver of *Miranda* rights was not knowing or intelligent. [*See* Doc. 58 at 3.] To the contrary, Magistrate Judge Shirley correctly stated that coercive police activity is required for a

2

determination that a confession was involuntary, he did not suggest it was also required for a determination lack of knowledge or intelligence. The R&R states,

> "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." [*McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).] "If the police misconduct at issue was not the 'crucial motivating factor' behind petitioner's decision to confess, the confession may not be suppressed." *McCall*, 863 F.2d at 459 (citing *Connelly*, 479 U.S. at 163-64). "Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989); *see also United States v. Dunn*, 2008 WL 698940, at *4 (6th Cir. Mar. 17, 2008) (holding that defendant's assertion that he was under the influence of Vicodin and marijuana when he waived his rights did not render his statement involuntary in the absence of police coercion).

[Doc. 56 at 65.]

In order for the Court to find a knowing, voluntary, and intelligent waiver of rights, the government must establish that the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). There is a presumption against waiver and thus the government bears the burden of proving that any waiver was voluntarily, knowingly, and intelligently given. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Whether a defendant's waiver of his rights was given voluntarily, knowingly, and intelligently is a question that must be decided based upon the totality of the circumstances surrounding the statement in question. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973); *Garner v. Mitchell*, 502 F.3d 394, 408 (6th Cir. 2007). The court must consider the

3

defendant's "age, experience, education, background, and intelligence, and [] whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Garner*, 502 F.3d at 408 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). Mental illness that prevents a defendant from understanding the nature of his rights precludes the defendant from being able to give a knowing, voluntary, and intelligent waiver of those rights. *See Miller v. Dugger*, 838 F.2d 1530, 1539 (11th Cir. 1988). An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. *Butler*, 441 U.S. at 373.

In considering whether defendant's statement was both voluntary and knowing and intelligent, Magistrate Judge Shirley considered the testimony of the two doctors who treated defendant, defendant's own testimony, and the testimony of others presented at the suppression hearings. The R&R throughly discusses defendant's mental state as it pertained to his ability to make a knowing, voluntary, and intelligent waiver of his rights. After such consideration and discussion, Magistrate Judge Shirley specifically made his determination that defendant's waiver of his rights was knowing, voluntary and intelligent based upon the totality of the circumstances citing many factors in addition to the lack of coercive police activity. [*See* Doc. 56 at 69.] Accordingly, the Court finds that Magistrate Judge Shirley applied the correct legal standard in the R&R .

4

Defendant also objects to certain factual findings as they pertain to the conclusion that he knowing, voluntarily, and intelligently waived his *Miranda* rights. Defendant argues that he was not in a position to make a knowing and intelligent waiver of his rights due to his mental condition and medication in his system. The Court has independently reviewed the record in this case and determines *de novo* that the evidence supports the conclusion that defendant's waiver of his *Miranda* rights was knowing, voluntary, and intelligent.

Though defendant was hospitalized for a drug overdose five days prior to his statement to law enforcement officers and had been medicated with prescription drugs between the overdose and the interview, defendant had been discharged from the Moccasin Bend Mental Health Institute ("Moccasin Bend") after an evaluation by Dr. Sarath and other staff members. [Suppression Hr'g Tr., Sept. 4, 2008.] Dr. Sarath indicated that he did not believe defendant had enough drugs in his system on the morning of his discharge from Moccasin Bend to make him confused [Hr'g Tr. at 17, Sept. 4, 2008], that he did not observe defendant being confused at anytime during his stay at Moccasin Bend [*id.*], that he did not see any evidence of psychosis [*id.* at 18], and that defendant was oriented to time, place, and person prior to his discharge [*id.* at 23].

Dr. Coyle, who first saw defendant in January 2008, testified that at the time of the interview by law enforcement officers, defendant was experiencing hallucinations and was severely depressed. [Suppression Hr'g Tr. 102-03, June 3, 2008.] Defendant argues that Dr. Coyle's testimony should be given more weight that Dr. Sarath's because he spent more time examining defendant. However, Dr. Coyle did not see defendant until long after defendant

5

gave his March 2007 statement to law enforcement officers and he based his opinions of defendant's condition at the time of the interview on defendant's medical records and defendant's own statements. [*Id.* at 104-06.]

Agent Bernard Waggoner, a special agent/criminal investigator with the Bureau of Alcohol, Tobacco, Firearms, and Explosives and Detective Kenneth Rocky Potter of the Rhea County Sheriff's Department took defendant's statement in the afternoon of March 7, 2007. Agent Waggoner testified that, during this interview, defendant was lucid, coherent, made sense when he spoke, and seemed to know what he was doing. [*Id.* at 25-26; 31.] Detective Potter also indicated that defendant seemed lucid and coherent and "knew what was going on" throughout the interview. [*Id.* at 81.]

Agent Waggoner testified that before he and Detective Potter took defendant's statement, he read defendant his rights and asked defendant if he understood his rights. [*Id.* at 23-25.] Defendant indicated that he did understand his rights and Agent Waggoner gave defendant a rights waiver form which defendant signed. [*Id.*; *see also* Suppression Hr'g Ex. 4, June 3, 2008.] The form lists defendant's *Miranda* rights and states above the signature line,

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made against me and no pressure or coercion of any kind has been used. I declare that I am not under the influence of alcohol or drugs.

[Ex. 4.] Defendant included a written statement in his own handwriting on the back of form. [*Id.*; *see also* Hr'g Tr. at 23, June 3, 2008.] Detective Potter confirmed that Agent Waggoner

6

read defendant his rights, that defendant stated that he understood those rights, and that defendant signed the form and gave a written statement in Detective Potter's presence. [*Id.* at 79.]

Defendant testified that he did not remember being read his *Miranda* rights and that he asked to speak with his attorney on two occasions but was not permitted to do so. [*Id.* at 133-134.] Defendant testified that he signed the rights waiver form but did not read it, even though he agreed that he can read and is a knowledgeable person. [*Id.* at 139.] Defendant explained that he gave the statement to the police and signed the rights waiver form in haste to help his wife because the law enforcement officers told him that she was in custody, handcuffed, and crying. [*Id.* at 134; 137-138.] Both Agent Waggoner and Detective Potter stated that they did not tell defendant anything about his wife being in custody, handcuffed, or crying and defendant did not tell officers that he wanted to speak to an attorney. [*Id.* at 32-33; 80.]

Agent Waggoner recounted the oral statement defendant gave the officers. [*Id.* at 28-29.] He stated that defendant gave the officers specific details regarding his construction of pipe bombs including what materials he used, where he got those materials, where he constructed the bombs, how he learned how to construct bombs, and why he threw them into the impound lot. [*Id.*] In giving this testimony, Agent Waggoner referred to the investigation report which he signed on March 12, 2007. [Suppression Hr'g Ex. 5, June 3, 2008.; *see also* Hr'g Tr. at 28-29, June 3, 2008.] Defendant denied some giving some of the

7

specific facts listed in the investigation report and he testified that the officers suggested some of the other facts to him. [*Id.* at 140-47.]

Based upon the totality of the circumstances, the Court finds that defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights and gave a statement to law enforcement officers. The officers' testimony that defendant was lucid and coherent at the time of his interview is consistent with Dr. Sarath's testimony that defendant did not seem confused and was oriented to time, place, and person prior to his discharge. Thus, none of the individuals who observed defendant near the time of the interview opined that defendant's ability to make a voluntary, knowing, and intelligent waiver of his rights was affected by the influence of drugs or a weakened mental state. Additionally, Agent Waggoner testified about the details defendant gave regarding his construction of pipe bombs. The amount of detail in defendant's statement further indicates defendant's coherency.

Both law enforcement officers testified that defendant was read his rights. This testimony is consistent with the officers providing defendant with a rights waiver form, a fact to which defendant admits. Both officers also testified that defendant indicated that he understood his rights and signed the waiver form without the officers telling defendant that his wife was in custody, handcuffed, or crying. The Court finds that Defendant's testimony that he was not read his *Miranda* rights is not credible.

Accordingly, the Court finds that defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights and this objection is **OVERRULED**.

8

### B. Objection to the Conclusion that Officers Obtained Valid Consent to Search Defendant's Residence

Defendant objects to Magistrate Judge Shirley's conclusion that defendant's wife, Jennifer Jones, gave voluntary consent for officers to search defendant's residence on March 7, 2007. Defendant argues that Judge Shirley erred in his credibility determinations and argues that Mrs. Jones gave consent after being told that officers were concerned about her safety and before being told that defendant was a suspect and, thus, her consent was coerced.

Generally, law enforcement officers may not search a residence without a search warrant. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). However, officers may lawfully enter and search a home if voluntary consent is given by a person with the authority to do so, such as a resident. *See id.* Whether consent is voluntary must be determined by the totality of the circumstances. *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). The Court should consider "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Id.* If law enforcement officers obtain consent by presenting a situation in which the individual from whom consent is sought would feel no choice but consent to the search, consent is invalid. *See United States v. Hardin*, 539 F.3d 404, 425 (6th Cir. 2008) (finding consent invalid when officers obtained consent by claiming that a water leak needed investigation).

9

Agent Waggoner testified that, on March 7, 2007, he told Mrs. Jones that the officers were investigating the discharge of pipe bombs in the Sweetwater Police lot, and that her husband was one of the suspects. [Hr'g Tr. at 12, June 3, 2008.] He explained the consent form to her and told her that she did not have to consent to a search several times. [*Id.*] She then signed the form. [*Id.* at 12-13.] The form indicates that person signing the form gives consent to search for firearms, ammunition, and components to make devices, and it authorizes the seizure of evidence of a crime. [Suppression Hr'g Ex. 1, June 3, 2008.] Rhea County Sheriff's Deputy Mike Bice, a witness whose signature appears on the consent form, confirmed that Agent Waggoner told Mrs. Jones that her husband was a suspect prior to her signing the consent form and that he explained the form several times. [Hr'g Tr. at 69, June 3, 2008.] Special Agent Daniel Foster of the Tennessee Bomb and Arson Section also testified that Agent Waggoner explained to Mrs. Jones that they were looking for bomb components and made it clear that her husband was a person of interest. [*Id.* at 60.] Special Agent Foster also testified that Agent Waggoner told Mrs. Jones that she did not have to give her consent. [*Id.*]

Mrs. Jones testified that she was not told that her husband was a suspect before she gave her consent to search the house, but that officers said they just wanted to check the home to make sure everything was safe. [*Id.* at 155;160.] She also testified that on the previous day she had been told that someone might be planning an attack on her husband. [*Id.* at 157.] Mrs. Jones testified that the officers told her that she did not have to sign the consent form but when she asked what would happen if she did not sign it, the officers told

10

her that they would get a search warrant. [*Id.* at 155; 157; 160.] Mary Clayton, defendant's mother and a witness whose signature appears on the form, testified that she overheard officers talking to Mrs. Jones prior to her signing of the consent form. [*Id.* at 175.] She testified that she heard the officers ask if they could look around the house to make sure everything was all right but she did not hear officers tell Mrs. Jones that her husband was a suspect until after she signed the consent form. [*Id.*] Ms. Clayton indicated that Mrs. Jones can read and write. [*Id.* at 176.]

The Court finds that Agent Waggoner explained Mrs. Jones' rights to her and told her that she did not have to give her consent to search. Mrs. Jones asked what would happen if she did not sign the form, indicating that she understood she did not have to give consent and that she did not feel as though she had no choice but to sign the form. Though officers told her that they would obtain a search warrant if she did not sign the form, such a statement does not taint a person's consent. *See United States v. Salvo*, 133 F.3d 943, 954 (6th Cir. 1998). Mrs. Jones's age, intelligence, and education was such that she understood her constitutional rights, she understood that she did not have to consent to the search, and she voluntarily signed the consent form.

In his brief objecting to the R&R, defendant argues that Magistrate Judge Shirley should have found that Mrs. Jones was not told that her husband was a suspect until after she signed the consent form and that the officers coerced her to sign the form by stating that they were concerned for her safety. Three officers testified that Mrs. Jones was told that her husband was a suspect or person of interest prior to her giving consent to search. Though

11

Mrs. Jones testified that she was not given this information until after she signed the form and Ms. Clayton said she did not hear the officers tell Mrs. Jones that he husband was a suspect until after she signed the form, the Court finds the testimony of the officers credible. In addition to three officer testifying consistently, the consent form indicates that officers would be searching for firearms, ammunition, components to make devices such a bombs, and other evidence of a crime. [Ex. 1.] The fact that the consent form itself states that officers desired to search inside to the home for components used to make bombs supports the notion that officers were forthcoming with the fact that they suspected defendant had been making bombs.

Though the Court agrees with Magistrate Judge Shirley's determination that the officers advised Mrs. Jones that her husband was a suspect before she signed the consent form, even if it determined that she was not told that her husband was a suspect until after she gave her consent, the Court would not find Mrs. Jones's consent involuntary. The officers suspected that there may be explosives and other materials for making pipe bombs in the house and therefore were not engaging in deceptive tactics or trickery when they told Mrs. Jones that they wanted to check the house to make sure it was safe. There is no requirement that a person giving consent to search a residence be told that a cohabitant is a suspect of a crime, only that they give consent voluntarily. Because Mrs. Jones understood her constitutional rights and understood that she did not have to give her consent, the Court finds that Mrs. Jones consent was voluntarily given and, accordingly, this objection is **OVERRULED**.

12

### III. Conclusion

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 56] of Magistrate Judge Shirley, and the motions to suppress [Docs. 20; 21] are hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE